district court of the Sixth judicial district of this state.

The order of the district judge made in reference to the funds in the hands of the Louisiana highway commission was not included in the transcript when our original decree was handed down in this case.

[3] As plaintiff is the owner of the judgment sought to be amended, we see no good reason why our original decree should not be amended as prayed for. It is therefore ordered that our original decree in this case be and is hereby so amended as to read as follows: For the reasons assigned, the rule nisi herein issued is made absolute, and, accordingly, the judgments of the district court and the Court of Appeal herein rendered are set aside, and it is now ordered that there be judgment in favor of the Pigeon-Thomas Iron Company and against Drew Bros. and the individual members of said firm, jointly and in solido, in the full sum of $402.85, with legal interest thereon from August 25, 1924, until paid and costs, the amount of said judgment to be paid out of the funds retained by the Louisiana highway commission and by it deposited in the district court in and for the parish of Madison under order of said court of date the 7th day of December, 1926.

---

(111 So. 184)

No. 28164.

HAMILTON v. LOUISIANA RY. & NAV. CO.

In re LOUISIANA RY. & NAV. CO.

(Nov. 29, 1926. Rehearing Denied Jan. 3, 1927.)

*(Syllabus by Editorial Staff.)*

1. **Commerce** ☞27(2)—**Railroad, carrying interstate shipments, whose lines are within limits of state, but which connects with other lines extending beyond state, is engaged in "interstate commerce."**

Railroad, whose own line did not extend beyond limits of state, but which connected at both termini with other lines which did extend beyond state, and which railroad carried large volume of both interstate and intrastate shipments, was engaged in "interstate commerce."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. **Master and servant** ☞265(1)—**Presumption is that sidings appurtenant to trunk line railroad track are needed in interstate commerce.**

Presumption is that all sidings appurtenant to trunk line railroad track are needed or useful in operation of all trains, including those engaged in carrying interstate commerce, unless it is shown that such sidings are in fact used exclusively for intrastate traffic.

3. **Commerce** ☞27(3)—**Where nearly half of cars moving over siding carried interstate shipments, siding was instrumentality of interstate commerce.**

Siding, in yard used for parking cars while making up trains, over which large number of shipments moved, of which nearly half were interstate, was instrumentality of interstate commerce.

4. **Commerce** ☞8(6)—**Where servant's claim arose exclusively under federal Employers' Liability Act, compromise was binding without being approved by district judge, as required by state statute (U. S. Comp. St. §§ 8657–8665; Act La. No. 20 of 1914, § 17).**

Where employee was injured while repairing instrumentality of interstate commerce, and thus his claim for damages arose exclusively under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), compromise of claim was binding without having been submitted to and approved by district judge, as required by Act La. No. 20 of 1914, § 17.

5. **Commerce** ☞27(8)—**Employee, injured while carrying timbers about to be used in repairing siding, which was instrumentality of interstate commerce, was employed in interstate commerce.**

Where employee was injured while carrying timbers about to be used in repair of railroad siding in defendant's yard used for parking cars while making up trains, which siding was instrumentality of interstate commerce, he was employed in interstate commerce.

Action by William Hamilton against the Louisiana Railway & Navigation Company. Judgment for plaintiff was affirmed by the

Court of Appeal, and defendant applies for certiorari and writ of review. Reversed.

Milling, Godchaux, Saal & Milling, of New Orleans, for applicant.

Gordon Boswell, of New Orleans, for respondent.

ST. PAUL, J. [1] The defendant is a common carrier by railroad, and, although its own line does not extend beyond the limits of the state, yet it connects at both termini with other lines which do extend beyond the state, and a large volume of both interstate and intrastate commerce flows over its rails. Defendant is therefore actually engaged in interstate commerce; and the relative volume of the one business to the other has no bearing on the fact that it is so engaged. Philadelphia & R. R. Co. v. Polk, 256 U. S. 332, 41 S. Ct. 518, 65 L. Ed. 958; Chicago K. & S. R. Co. v. Kindlesparker (C. C. A.) 234 F. 1.

### I.

[2] It follows, therefore, that defendant's main track and bridges are instrumentalities of interstate commerce, as are also all sidings needed or useful in operating trains carrying interstate commerce; and the presumption is that all sidings appurtenant to a trunk line railroad track are needed or useful in the operation of all trains, including those engaged in carrying interstate commerce, unless it be shown that such sidings are in fact used exclusively for the accommodation of intrastate traffic only.

### II.

[3] Plaintiff was in defendant's employ, and was injured whilst carrying timbers about to be used in the repair of a siding in its yard used for parking cars whilst making up trains. The evidence shows that in a period of eight months, about the time of the accident, 3,035 cars moved over this siding, out of which 1,586 were intrastate cars, and 1,449 carried interstate shipments. This siding was therefore both useful, and used, in interstate traffic, and hence was an instrumentality of interstate commerce; and plaintiff was assisting in repairing it.

### III.

[4] Plaintiff claimed damages of defendant for the injuries so received by him, and this claim was compromised. Thereafter he sued, and now sues, for compensation under the State Workmen's Compensation Law. If plaintiff's claim arises under the state statute, then the compromise is not binding, because the settlement was not submitted to and approved by the district judge. Act No. 20 of 1914, § 17. On the other hand, if plaintiff's claim arose exclusively under the federal Employees' Liability Act, then the compromise or settlement is binding, as the state statute then has no application. St. Louis, etc., R. Co. v. Seale, 229 U. S. 156, 33 S. Ct. 651, 57 L. Ed. 1129, Ann. Cas. 1914C, 156.

### IV.

The federal Employers' Liability Act (Act of April 22, 1908, 35 Stat. 65 [U. S. Comp. St. §§ 8657–8665]) applies to "every common carrier by railroad while engaging in commerce between any of the several states or territories," and to "any person suffering injury while he is employed by such carrier in such commerce."

In Chicago, K. & S. R. Co. v. Kindlesparker, 234 F. 1, the United States Circuit Court of Appeals noted, according to the jurisprudence, a *marked distinction* between injuries suffered by an employee engaged in repairing an instrument of interstate commerce and injuries received by an employee using or operating such instrument while handling only intrastate traffic, and said:

"As to the repairer, his service partakes of the character of the instrumentality; as to the operative, his service partakes of the character of the traffic"—citing Boyle v. Penn. Ry. Co., 228 F. 266, 142 C. C. A. 558.

### V.

We are therefore not presently concerned with any seeming conflict in the jurispru-

dence appertaining to employees injured whilst *operating* some instrument of interstate commerce; i. e., holding some particular act a part of some interstate traffic, and some other act only part of some intrastate traffic. For the fact remains that the federal courts, within whose province the matter peculiarly lies, have uniformly held that repairing *and maintaining* an instrument of interstate commerce constitutes employment in such commerce, and that those engaged in actually repairing and maintaining such instrument, or even *assisting* therein, are employed in interstate commerce.

Thus the following have been held to be employed in interstate commerce, to wit: One carrying bolts and rivets to be used next day in repairing a bridge (Pedersen v. Delaware, etc., R. R. Co., 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153); one engaged in repairing tracks (New York Cent. R. Co. v. Winfield, 244 U. S. 147, 37 S. Ct. 546, 61 L. Ed. 1045, L. R. A. 1918C, 439, Ann. Cas. 1917D, 1139); one carrying blocks of wood to be used in jacking up a wrecked car so as to clear the track (Southern Railway Co. v. Puckett, 244 U. S. 571, 37 S. Ct. 703, 61 L. Ed. 1321, Ann. Cas. 1918B, 69); one shoveling snow from near the track (N. Y. Central R. Co. v. Porter, 249 U. S. 169, 39 S. Ct. 188, 63 L. Ed. 536); one cooking meals for carpenters engaged in repairing a bridge (Philadelphia B. & W. R. Co. v. Smith, 250 U. S. 101, 39 S. Ct. 396, 63 L. Ed. 869); one engaged in repairing a locomotive in a roundhouse (Law v. I. C. R. Co. [C. C. A.] 208 F. 869, L. R. A. 1915C, 17; Chicago, K. & S. R. Co. v. Kindlesparker [C. C. A.] 234 F. 1); one engaged in repairing a refrigerator car in a shop (Northern Pacific R. R. Co. v. Maerkl [C. C. A.] 198 F. 1).

## VI.

[5] Manifestly, therefore, under that jurisprudence, this plaintiff was employed in interstate commerce. And we see no conflict between our present holding and what we held in Dupuis v. La. R. & N. Co., 155 La. 954, 99 So. 709. In that case the deceased was killed whilst unloading some piles from a train handling only intrastate business, and we found: (1) That his immediate employment would have ended with their unloading; and (2) that whilst it was shown that the piling was intended for use *at some time* to deflect the waters of a stream, and thus render more secure a railroad bridge, nevertheless there was no proof "as to when or whether it ever would be so used." In other words, these piles were being assembled for possible use at some future time; whilst here the proof is that the timbers were to be used the very next day.

## VII.

The Court of Appeal first decided this case for the defendant; but on rehearing decided for plaintiff. Our conclusion is that their former judgment was correct.

### Decree.

The judgment of the Court of Appeal is therefore reversed, and it is now ordered that plaintiffs' demand be rejected at his cost in all courts.